# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RAQUEL RAMIREZ-BENITEZ,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

CIVIL NO.  25-1210 (HRV)

## OPINION AND ORDER[1]

Raquel Ramirez-Benitez (hereinafter "Ms. Ramirez" or "Plaintiff"), seeks review of the final administrative decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability benefits under the Social Security Act ("the Act"). She requests that the Commissioner's decision be reversed and that the case be remanded for further administrative proceedings. The Commissioner opposes, arguing that the decision should be affirmed because it is based on substantial evidence.

## I.  LEGAL FRAMEWORK

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of a final decision of the Commissioner. Under said statutory provision, the Court is empowered

---

[1] Camille A. González-Correa, a third-year law student at the Inter American University of Puerto Rico School of Law, provided significant assistance in the research and drafting of this Opinion and Order.

"to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." *Id.*  In addition, the statute provides that if supported by substantial evidence, the findings of the Commissioner as to any fact, shall be conclusive. *Id.*

A reviewing Court must uphold the decision of the Commissioner as long as the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is, therefore, limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence.  *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the reviewing court is persuaded that it contains sufficient evidence to support the Commissioner's factual and legal determinations, the decision is bound to be affirmed. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019); *see also Mosconas v. Saul*, No. 19-2049, 2020 WL 6255298, 2020 U.S. App. LEXIS 33755, at *2 (1st Cir. Sept. 15, 2020) (citation omitted) ("Substantial evidence does not require preponderant evidence; it merely requires evidence that reasonably supports the finding on the record as a whole.") Indeed, substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y*

*of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.    The Five-Step Sequential Evaluation Process**

To be eligible for social security benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146, (1987). The Act defines disability in pertinent part as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a), § 1382c(a)(3)(A). The impairment or impairments must be severe enough that "he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy...." *Id.*, § 423(d)(2)*,* § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1520(a)(1).

The Commissioner follows a five-step evaluation process to determine disability. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 404.1520(a). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*. The Plaintiff has the burden of proof with respect to the first four steps of the process.  *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

Step one considers work activity, that is, whether the Plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the person is, then she is not disabled under the Act. *Id*.  Step two asks whether the Plaintiff has a physical or mental impairment—or a combination of impairments—that is severe and meets the

Act's duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). Step three considers the medical severity of the Plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, if Plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, Subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). On the other hand, if the Plaintiff is not found to be disabled at this step, her Residual Functional Capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e).

Once the ALJ determines the RFC of the claimant, the inquiry proceeds to step four. Step four compares the Plaintiff's RFC to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the Plaintiff can still do her past relevant work, she is not disabled. *Id*. Finally, at step five, the Plaintiff's RFC is considered alongside her "age, education, and work experience to see if [he or she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If [he or she] can make an adjustment to other work, she is not disabled; if she cannot, she is disabled. *Id*.  At this step, it is the Commissioner who has the burden "to come forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d at 608 (*citing Arocho v. Sec'y of Health & Human. Servs.*, 670 F.2d 374, 375 (1st Cir. 1982)).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ms. Ramirez originally applied for disability insurance benefits on August 27, 2021, alleging her disability began on August 2, 2021. *See* Transcript of Social Security Proceedings ("Tr."), Docket 9, (Tr. 616-24). The claim was initially denied on April 19, 2022, and on reconsideration on November 14, 2022. (Tr. 399-418).

On January 8, 2024, a hearing was held presided by ALJ Judith Torres where Ariel Cintron Antonmarchi, an impartial vocational expert ("VE"), also appeared and testified. (Tr. 55-85). On May 20, 2024, the ALJ notified an unfavorable decision. (Tr. 33-54).

In her written decision, the ALJ determined at Step One of the five-step sequential process that Ms. Ramirez did not engage in substantial gainful activity since the alleged onset date, that is, August 2, 2021. (Tr. 35). At Step Two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar spine disorders, bilateral carpal tunnel syndrome, and anxiety and depressive disorders. (Tr. 36). The ALJ carefully explained why the fibromyalgia condition was not included as a severe impairment. (Id.) In doing so, the ALJ noted that Ms. Ramirez was evaluated by rheumatologist Carlos Fernandez-Vazquez, M.D., who diagnosed her with fibromyalgia and prescribed medication. (Id.). The ALJ further noted this diagnosis was based on a single examination and that there is no additional evidence showing any additional treatment for the fibromyalgia condition. (Id.). The ALJ also commented that Dr. Fernandez-Vazquez completed a Fibromyalgia Medical Assessment Report wherein he outlined the symptoms that Plaintiff reported. He also included his opinion regarding the work-related limitations the fibromyalgia condition would likely impose on Ms. Ramirez. (Id.).

Besides pointing out that Dr. Fernandez-Vazquez's opinion went to the question of disability, which is a task reserved exclusively to the Commissioner, the ALJ found that the limitations assessed were not supported by Dr. Fernandez-Vazquez's own progress notes. (Id.). Ultimately, the ALJ concluded that the record did not establish

substantial evidence that said impairment had more than a minimal effect on Plaintiff's ability to perform work related activities that has lasted, or could reasonably be expected to last, at least twelve (12) consecutive months. As such, fibromyalgia was considered to be non-severe. (Id.). Nevertheless, the ALJ explained that consistent with the applicable regulations, non-severe impairments such as the fibromyalgia condition can, when considered in conjunction with the severe impairments, impact the RFC determination. (Id.).

Analyzing Step Three, the ALJ concluded that Ms. Ramirez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 37). The ALJ considered all the listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1, and paid particular attention to 1.15 and 11.14. (Id.). However, according to the ALJ, the medical evidence did not establish the criteria for these listings. (Id.).

With respect to Ms. Ramirez's mental impairments, the ALJ similarly held that they did not meet or medically equal the criteria in listings 12.04 and 12.06. (Id.). In so finding, the ALJ discussed why the "Paragraph B" criteria was not satisfied. To satisfy "Paragraph B" criteria, the mental impairment must result in one extreme limitation or two marked limitations in a broad area of functioning. (Id.). But here, based on the evidence on record, the ALJ assessed only moderate limitations in all four relevant areas. (Tr. 37-39).

The ALJ likewise found that the evidence fell short of establishing the relevant Paragraph C criteria. (Tr. 39). Specifically, the record did not establish that Ms. Ramirez has a minimal capacity to adapt to changes in her environment or to demands that are

not already part of her daily life. Similarly, she has not lived in a highly supportive living environment, nor has she been hospitalized for psychiatric treatment or care, not even a partial admission. (Id.).

Next, and prior to moving to Step Four of the sequential process, the ALJ concluded that Plaintiff had an RFC

> to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). The claimant can lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours in an 8-hour workday, stand and/or walk for 2 hours in an 8-hour workday. The claimant can frequently reach and in all other directions with both upper extremities. She can handle and finger items frequently with both hands. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently balance; occasionally stoop, kneel, and crouch but never crawl. She can never work at unprotected heights and can occasionally work around moving mechanical parts and operate a motor vehicle. The claimant can occasionally work exposed to extreme cold and vibration. From a mental standpoint, the claimant can understand, remember, and carryout instructions for simple, routine; use judgement and deal with changes in the work setting for simple work-related decisions; is able to interact with supervisors, coworkers and with the public occasionally.

(Tr. 39-40).

In reaching this conclusion, the ALJ indicated that she considered all of Plaintiff's symptoms to the extent they are consistent with the objective medical evidence as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p, as well as medical opinions and prior administrative medical findings as mandated by 20 C.F.R. § 404.1520c. (Tr. 40). She followed the required two-step process (first determining if the physical or mental impairments could reasonably be expected to produce the pain and/or symptoms alleged and, second, evaluating the intensity, persistence, and limiting

effects of said symptoms to determine the extent to which they limit Plaintiff's work-related activities). She then concluded, after a thorough and detailed explanation (Tr. 40-46), that Ms. Ramirez's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 40). However, her statements concerning the intensity, persistence, and limiting effects of such symptoms was not fully credited because they were not entirely consistent with the evidence in the record. (Id.).

Thus, the ALJ found that the objective medical evidence and medical opinions that form part of the record did not call for a more restrictive RFC. (Tr. 46). While recognizing that Plaintiff's physical and mental impairments could cause her to experience some limitations in the activities she can perform, the ALJ held that the functional restrictions that are supported by the substantial evidence in the record would not limit Plaintiff's "daily activities to the profound degree alleged." (Tr. 46).

The ALJ further found that Ms. Ramirez was unable to perform any past relevant work (Step Four). (Id.). However, she determined that considering her age, education, work experience, and RFC there were a significant number of jobs existing in the national economy that Plaintiff could perform (Step Five), such as lens inserter, optical goods; printed circuit layout taper, electrical equipment; and document preparer, all classified as unskilled, sedentary level jobs with an SVP of 2. (Tr. 48). Accordingly, the ALJ concluded that Ms. Ramirez was not disabled under the Act. (Id.).

On May 24, 2024, Plaintiff sought review of the ALJ's decision before the Appeals Council. On February 11, 2025, the Appeals Council denied her request for review. (Tr. 1-9). On that date, the ALJ's decision became the Commissioner's final decision.

On April 11, 2025, Plaintiff filed her social security complaint before this Court. (Docket No. 1). On April 14, 2025, upon consent provided by the parties, this case was formally referred to the undersigned for all further proceedings including the entry of judgment. (Docket No. 6). Subsequently, on June 9, 2025, the social security transcript was filed at Docket No. 9. Plaintiff's social security brief was filed on August 5, 2025, (Docket No. 12), and the Commissioner's on August 22, 2025. (Docket No. 14). Ms. Ramirez replied to the Commissioner's response on October 6, 2025. (Docket No. 17).

### III.  DISCUSSION

Plaintiff brings three claims of error in her quest to obtain reversal of the ALJ's decision. First, she challenges the ALJ's physical RFC assessment as unsupported by substantial evidence. According to Ms. Ramirez, the medical evidence of record reveals that she has further limitations that those found by the ALJ. Second, Plaintiff contends that that the ALJ erred in finding that her mental impairments did not meet the criteria of listing 12.04 for an affective disorder, particularly the "Paragraph B" criteria. On the contrary, Plaintiff submits that the substantial evidence in the record clearly establishes that she is suffering from an affective disorder, described as a depressive syndrome, and that the impairment imposes marked limitations on all areas of functioning covered by Paragraph B. Lastly, Plaintiff argues that the ALJ did not apply the proper legal standard for evaluating her subjective complaints nor presented a full discussion of the *Avery*[2] factors.

_____

[2]    *Avery v. Sec'y of Health and Human Servs.*, 787 F.2d 19 (1st Cir. 1986).

The Commissioner counters that Plaintiff's challenge is nothing more than a request for this Court to reweigh the evidence in her favor, something that the Court may not do. With respect to the RFC assessment, it is the Commissioner's position that the same is supported by substantial medical evidence and additional evidence from various sources and that the ALJ took the time to carefully explain what evidence was persuasive and what evidence was less deserving of credibility. As to the mental impairments, the Commissioner posits that substantial evidence supports the ALJ's decision that Plaintiff does not meet the criteria of listing 12.04 because the record only supports moderate limitations in the relevant functioning areas. Finally, the Commissioner argues that the ALJ properly assessed Plaintiff's subjective complaints and applied the correct standard. The Commissioner thus moves this Court to affirm the ALJ's decision.

## A.    Physical RFC Assessment

At the outset, I examine this claim of error, as well as the other issues raised by Plaintiff, mindful of my role under the applicable standard of review, which is deferential and does not allow a reviewing district court to reweigh the evidence properly considered by the ALJ. *See Colon v. Secretary of HHS*, 877 F.2d 148, 153 (1st Cir. 1989).

Here, the ALJ found that Ms. Ramiez had a RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) with limitations to lifting, carrying, and pushing and pulling 10 pounds occasionally and less than 10 pounds frequently. She was also found to be able to sit for 6 hours and walk for 2 hours in an 8-hour workday. The ALJ also concluded that Plaintiff could frequently reach in all directions with her upper extremities as well as handle and finger items. She can, according to the ALJ,

"occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds" and "frequently balance; occasionally stoop, kneel, and crouch but never crawl." (Tr. 39).

Plaintiff objects to the ALJ's RFC determination arguing that the medical evidence in the record supports the finding of "limited sedentary work" but with more restrictions than those identified by the ALJ. (Docket No. 12 at 11). After outlining the medical evidence that in her view supports such assessment, Plaintiff constructs a more limited RFC. (Id. at 13). For instance, she says the evidence supports limitations on lifting and carrying less than 10 pounds "occasionally" as opposed to "frequently," as found by the ALJ. She also suggests that contrary to the ALJ's findings, the evidence shows that she is restricted to sitting at a given time for 30 minutes, standing only for 20 minutes, and sitting/standing/ walking less than 2 hours in an 8-hour workday. Plaintiff similarly proffers a more limiting RFC in the areas of reaching and manipulation.

Plaintiff relies almost exclusively on the Fibromyalgia Medical Assessment Form that appears on the record starting at Tr. 1047[3] to say that "[t]hese additional non-exertional postural and manipulative limitations erode even further significantly [sic] the sedentary occupational base." (Docket No. 12 at 12). Additionally, Plaintiff cites to Social Security Ruling SSR 96-9p for the proposition that the limitations she claims the evidence support, which includes inability to sit for less than two hours in an 8-hour

---

[3]    In his brief, counsel outlines the limitations he claims are supported by substantial evidence but cites to Tr. 1056. (Docket No. 12 at 12). It should be noted that Tr. 1056 is a blood alcohol test dated November 15, 2023. It contains no information about functional limitations.

workday, would yield an RFC of less than a full range of sedentary work. Thus, significantly eroding the sedentary occupational base. (Id. at 13-14).

The problem with the above-stated position is that the ALJ extensively addressed the fibromyalgia evidence upon which Plaintiff now relies to suggest a more limiting RFC and found it to be unpersuasive for lack of contemporaneous treatment notes by Dr. Fernandez-Vazquez. Additionally, the evidence was inconsistent with other evidence in the record. I have reviewed the careful explanation of the ALJ regarding the evidence that she found to be persuasive as well as the evidence the ALJ concluded was deserving of less weight. I discern no error in the weighing of said medical evidence vis-à-vis other evidence including Plaintiff's testimony.

For instance, there is no question that Plaintiff suffers from cervical and lumbar spine disorders as well as bilateral carpal tunnel syndrome. Imaging studies reveal partial fusion of the C3-C4 vertebras. These results are consistent with complaints of cervical pain. However, as noted by the ALJ, Ms. Ramirez was found to have normal sensation, reflexes, motor function, coordination, and cervical spine motion. The ALJ also noted that in August of 2021, Plaintiff was seen by Dr. Natalia Betances-Ramirez ("Dr. Betances"), a physiatrist, and was ordered physical therapy. The ALJ similarly summarized the medical evidence from follow-up visits with Dr. Betances and from her primary care physician between June and August of 2022, where Plaintiff complained of persistent cervical pain radiating to upper extremities and associated numbness, tingling, cramping pain, and weakness. On both occasions, there was no evidence found of atrophy or swelling and Plaintiff showed a full active and passive range of motion and normal deep tendon reflexes. Dr. Betances treated Plaintiff with trigger point injections.

However, in a follow-up visit in October 2022, Plaintiff reported that no significant improvement had been attained.

Electrodiagnostic studies of the upper extremities in August of 2022 revealed evidence of bilateral mild medial nerve focal entrapment neuropathy at wrist level which is consistent with carpal tunnel syndrome but no evidence of cervical radiculopathy or other entrapment neuropathy. Notably, Dr. Betances ordered physical therapy in October of 2022, but it was not until July of 2023 that Ms. Ramirez, in fact, received physical therapy. After that, the record is void of evidence of additional treatment for Plaintiff's musculoskeletal conditions.

Moreover, while the consultative examination performed by Dr. Nilma E. Rosado-Villanueva revealed limited range of motion on the neck, hips, knees, and shoulders, Plaintiff was found to have normal unassisted gait, was able to sit, stand, get up and down without difficulty, and no acute distress was evident. Further, during the consultative examination, inspection, and palpitation of the extremities was unremarkable, all special knee tests were negative, and Plaintiff had 5/5 muscular strength on elbows and both lower extremities. She had normal tendon reflexes and no sensory deficits. The examination showed no evidence of pain, tenderness, swelling, nodes, deformity, or atrophy despite a positive Tinel's sign. Dr. Rosado-Villanueva reported that Ms. Ramirez was able to grip, grasp, pinch, finger tap, oppose the fingers, button a shirt, and pick up a coin with both hands.

The ALJ also mentioned that imaging studies performed as part of the consultative examination confirmed the fusion of the C3 and C4 vertebras, but the remainder of the disc spaces were preserved; vertebral bodies and posterior elements

were intact, and uncovertebral joints and vertebral alignment was normal. No evidence was found of spondylosis, fracture, or instability. Other studies likewise revealed unremarkable findings in the lumbar spine and preserved disks spaces. Overall, the ALJ found the report of Dr. Rosado-Villanueva to be "somewhat persuasive" inasmuch as the findings of her examination correlate with Plaintiff's upper back and cervical muscle spasms as well as carpal tunnel syndrome.

Thus, based on the above, the ALJ found that while the Plaintiff's physical impairments, namely her musculoskeletal disorder and her carpal tunnel syndrome could reasonably result in some functional restrictions, she concluded that they are not "profoundly limiting." (Tr. 41-42). The record contains no evidence of significant restrictions nor evidence of Plaintiff requiring orthopedic evaluations or more aggressive treatment, such as surgery. Despite this, in addition to exertional limitations, the ALJ included additional postural, manipulative, and environmental limitations in the RFC to address the combined effect of all physical impairments.

All things considered, I cannot reasonably hold that the ALJ's conclusions are not supported by substantial evidence. I agree with the Commissioner that, as to this issue in particular, Plaintiff is simply asking this court to reweigh the medical evidence in her favor and give the evidence that bolsters her position more weight than evidence that does not. The Court, however, cannot reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. *Thomas P. v. Kijakazi*, No. 21-00020-WES, 2022 U.S. Dist. LEXIS 4217, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022). Where, as here, the ALJ's decision is supported by substantial evidence, the Court must

affirm, even if the Court would have reached a contrary result as finder of fact. *See Rodriguez Pagan v. Sec'y Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).

## B.    Listing 12.04

Plaintiff argues that her mental impairments satisfy the criteria under Listing 12.04. Therefore, she assigns error to the ALJ's finding to the contrary. Specifically, she attacks the conclusion of the ALJ regarding the "Paragraph B" criteria contending that she has "marked limitations" in all four areas of mental functioning as opposed to just moderate limitations.

Plaintiff bears the burden of showing that her mental impairment or combination of impairments meets or equals a particular listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d); *see also Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987) (holding that "[t]he burden to demonstrate the existence of such a [listed] impairment rests with the [plaintiff]."). "For a [plaintiff] to show that [her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)); 20 C.F.R. § 404.1525(c)(3).

Listing 12.04 applies to depressive, bipolar, and related disorders. 20 C.F.R. part 404, Subpart P, Appendix 1, 12.00A1. To satisfy the criteria under Listing 12.04, a plaintiff must first present medical documentation of a depressive disorder (the Paragraph 12.04A requirement) and must also satisfy either Paragraph B or Paragraph C of the listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04. To satisfy Listing 12.04A1, a claimant must have a well-documented depressive disorder which is

characterized by five of the nine listed symptoms specified, namely, "Depressed mood; Diminished interest in almost all activities; Appetite disturbance with change in weight; Sleep disturbance; Observable psychomotor agitation or retardation; Decreased energy; Feelings of guilt or worthlessness; Difficulty concentrating or thinking; or Thoughts of death or suicide." *Id.* (a)-(i).[4]

Paragraph B of Listing 12.04, in turn, requires that a claimant demonstrate an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning": (1) "[u]nderstanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; or (4) "adapting or managing oneself." *Id.* § 12.04B. Relevantly, a marked limitation means that a plaintiff's functioning in the area "independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* § 12.00F2d. A claimant has a "moderate limitation" if his functioning in a Paragraph B area is "fair." *Id.* § 12.00F2c.

Again, the ALJ determined that Listing 12.04B criteria was not met because Plaintiff had only moderate limitation in the pertinent areas of functioning. For instance, as to understanding, remembering, or applying information, the ALJ found that Plaintiff was "able to comprehend memorize brief, straightforward job-related instructions and work processes, but [that] claimant's capacity to learn and recall novel, complex occupational concepts and processes efficiently could be adversely affected by [her]

---

[4]    In my analysis if this claim of error, I assume that Plaintiff's mental impairments satisfy Listing 12.04A1. I focus my analysis on the "Paragraph B" criteria.

mental impairments." (Tr. 37-38). Moreover, while Plaintiff alleged that she has difficulty remembering generally and completing tasks, the ALJ highlighted that Plaintiff acknowledged being able to pay bills, manage a savings account, and not needing reminders to take care of her personal hygiene. (Tr. 38). Furthermore, during the January 8, 2024, hearing before the ALJ, Plaintiff testified without significant difficulty about her past work and her previous health conditions. (Id.).

Second, with respect to the area of interacting with others, which in a work setting include supervisors, co-workers, and the public, Ms. Ramirez was considered "sufficiently capable of communicating about routine employment matters, accepting periodic, instructive supervisory input, maintaining an acceptable personal appearance, and abiding by the general social conscriptions governing most vocational environments most of the time." (Tr. 38). The ALJ did acknowledge that considering the limitations imposed by her mental impairments on her social skills, Plaintiff naturally would have difficulties in "maintaining effective performance in customer service positions, forming or sustaining collaborative relationships with coworkers, and responding appropriately to critical managerial feedback." (Id.). Nevertheless, the record showed that Ms. Ramirez was able to spend time with her children and socialize with others over the phone. She also established a good rapport during psychological evaluations. (Id.).

Third, as to Ms. Ramirez's ability to concentrate, persist, or maintain pace, the ALJ found that a moderate limitation was warranted considering that she has the mental capacity to execute short and simple instructions in order to complete a job task that is both recurrent and uniform. (Id.). Her symptoms do pose functional disadvantages which could lead to inconsistencies in her attention, on-task behavior, and persistence,

particularly in socially demanding work environments that require the execution of complex and time-sensitive tasks. (Id.). Evidence of her reports of limitations concentrating generally were balanced by the ALJ against progress notes and mental status examinations from psychiatric treatment that consistently showed Plaintiff was "alert, well oriented, coherent, logical and/or relevant without evidence of significant cognitive deficits." (Id.).

Lastly, when assigning a moderate limitation in the area of adapting or managing oneself, the ALJ concluded that Plaintiff remains sufficiently capable of adjusting to modifications in duties, if they are carefully explained and gradually implemented, adhering to safety guidelines, meeting travel demands, acting in a goal-oriented fashion, and demonstrating an acceptable level of independence despite her mental impairments. (Tr. 38-39). But given the effect that her mental conditions have on stress-tolerance and resilience, Ms. Ramirez may have difficulties adjusting to abrupt changes in work-related matters. (Tr. 39). Despite her asserted difficulty handling stress, she denied having a history of legal problems or other issues in the community and has been described, on multiple occasions, as cooperative in medical evaluations. (Id.).

The Commissioner posits, persuasively in my view, that the finding of moderate limitations in all functioning areas covered the paragraph B is more limiting than what was found by the State agency consultant at the initial level. Dr. Machado assessed only mild limitations with respect to interacting with others and adapting or managing oneself. This shows that the ALJ properly considered all evidence, including Plaintiff's subjective complaints, and conscientiously balanced the relevant criteria. Indeed, the ALJ supported her findings with ample citations to the record, including Ms. Ramirez's

own testimony and reports she had made to various mental health-care providers. And any inconsistencies in the medical evidence were for the ALJ to resolve.

Accordingly, I find that the ALJ's findings as to this issue are well supported, thoroughly explained, and her reasoning is unassailable. Therefore, since Plaintiff has failed to meet her burden of showing that her mental impairments caused at least two marked or one extreme limitation, Listing 12.04B criteria is not satisfied and reversal is unwarranted.

## C.    Plaintiff's Subjective Complaints

Turning now to Plaintiff's final claim of error, she alleges that the ALJ did not apply the proper legal standard for evaluating her testimony as to her symptoms nor included a thorough discussion of the *Avery* factors. (Docket No. 12 at 18). More specifically, Plaintiff contends that the ALJ erred in finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record because she failed to support this conclusion with any examples, general or specific. (Id.).

The Commissioner responds that contrary to Plaintiff's assertions, the "ALJ fully comported with the requirements of the regulations and rulings by reviewing the entire record and looking at the consistency (or lack thereof) among the evidence to reach a proper conclusion that is legally sound and supported by substantial evidence." (Docket No. 14 at 13). In fact, says the Commissioner, the ALJ referenced substantial evidence to support her conclusions. The Commissioner further argues that Plaintiff's reliance on *Avery v. Sec'y of Health and Human Servs.*, 787 F.2d 19 (1st Cir. 1986) is misplaced because said decision concerned SSR 82-58 that has since being rescinded and replaced

by subsequent ruling, including SSR 16-3p. (Id. at 14). The Commissioner maintains that Plaintiff is trying to usurp the ALJ's authority to draw inferences from the record and resolve conflicts in the evidence.

The Act specifically provides that a claimant will not be considered disabled unless she furnishes medical and other evidence, such as medical signs and laboratory findings, showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of the evidence of a claimant's subjective statements about her symptoms, including pain, and determine "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence." *See* SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). The ALJ may not disregard a claimant's statements about the intensity, persistence, and limited effects of symptoms "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 4790249, at *49465. On the other hand, subjective statements regarding symptoms cannot, by themselves, support a finding of disability. 20 C.F.R. § 404.1529(a). Further, in evaluating the intensity, persistence, and limiting effects of a person's symptoms, SSR 16-3p requires that the ALJ consider, among other things, a claimant's daily activities. 2016 SSR LEXIS 4, 2017 WL 5180304, at *7.

Here, the ALJ considered Ms. Ramirez's reported daily activities as follows: "she is able to pay bills, manage a savings account, spend time with her children, spend time watching television, and take care of her personal hygiene without needing reminders to do so." (Tr. 38). And it should be noted that the ALJ considered Plaintiff's daily activities

20

as one of several factors in reaching her conclusions regarding her subjective complaints; it was not the sole factor. The ALJ also found the subjective complaints to be inconsistent with the objective medical evidence. She was careful to explain her reasoning in significant detail and cited directly from medical evidence and other evidence in the record. (Tr. 40-46). No more was needed.

Simply put, substantial evidence supports the ALJ's determination that Plaintiff's reported symptoms were not entirely consistent with objective medical evidence in the record. Given the standard of review, this conclusion can hardly be deemed error. *See Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018); *see also Berrios-Lopez v. Secretary of HHS*, 951 F.2d 427, 429 (1st Cir. 1991). Objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *5. Relevant to this case, there is a significant amount of objective medical evidence that conflicts with Plaintiff's subjective statements, creating inconsistencies. And an ALJ may discount subjective complaints where there is evidence to directly rebut Plaintiff's testimony. *See Sacilowski v. Saul*, 959 F.3d 431, 441 (1st Cir. 2020).

Finally, I quickly dispose of the argument regarding consideration of the *Avery* factors[5] because the record is clear, as noted above, that the ALJ applied the proper standard under the applicable SSA rulings and considered all factors relevant to the

---

[5] The factors include the claimant's daily activities, functional restrictions, non-medical treatment, medications and side-effects, precipitating and aggravating factors, and the nature, location, onset, duration, frequency, radiation, and intensity of the symptoms. *Avery*, 797 F.2d at 28-29.

assessment Plaintiff's symptoms. Also, no authority has been cited for the proposition that the *Avery* factors need to be specifically mentioned. Caselaw is actually to the contrary. *See e.g.*, *Richards v. Kijakazi*, 554 F. Supp. 3d 242, 252 (D. Mass. 2021) ("An ALJ is not required to discuss each of the Avery factors in order to sufficiently support a credibility determination."); *Stafford v. Saul*, 564 F. Supp. 3d 1, 7 (D.N.H. 2020) ("As long as the Avery factors are explored during the administrative hearing and the ALJ provides specific reasons for any adverse credibility assessment, the ALJ complies with Avery and his findings are entitled to deference."); *Mercado v. Comm'r of Soc. Sec.*, 767 F. Supp. 2d 278, 285 (D.P.R. 2010) (Arenas, M.J.) ("Generally, a failure to address all of the *Avery* factors in the rationale of the final decision is cured if the factors are discussed or considered at the administrative hearing."). Another judicial officer in this district recently rejected the exact same argument made by Plaintiff here. *See Juan T.S. v. Comm'r of Soc. Sec.*, No. 24-1215 (GLS), 2025 WL 2753403, 2025 U.S. Dist. LEXIS 190749, at *22 (D.P.R. Sep. 26, 2025) (Lopez-Soler, M.J.).

## IV.    Conclusion

In view of the above, I find that the ALJ's decision is supported by substantial evidence and that she applied correct legal standards. Accordingly, the decision of the Commissioner is hereby AFFIRMED. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 15th day of January, 2026.

<u>S/Héctor L. Ramos-Vega</u>
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE